**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Bernard L. KENT, Defendant-Appellant.**

**No. 48262.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 28, 1985.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1985.

Application to Transfer Denied
Oct. 16, 1985.

Lew A. Kollias, Columbia, for defendant-appellant.

John Ashcroft, Atty. Gen., Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

A jury found defendant guilty on Count I of possession of less than 35 grams of marijuana and, on Count II, of possession of Pentazocine, a schedule IV controlled substance. As a persistent offender, he was sentenced by the court to six years on the felony conviction under Count II and the jury assessed punishment at 6 months and a $250.00 fine on Count I, a misdemeanor. From these convictions and sentences defendant appeals. We affirm.

On February 17, 1983, defendant was a resident of the St. Louis County Jail at Gumbo. He was clustered with a group of about 6 inmates in the gymnasium. As William Isgriggs, a corrections officer, approached the group he heard someone yell "here comes Bill." The group began to scatter. Isgriggs saw the defendant throw a cigarette to the ground. He ordered the group to line up against the wall and he then observed defendant place an object in his mouth. Isgriggs extracted from defendant's mouth a plastic lid containing a powdery substance subsequently identified as Pentazocine, a schedule IV controlled substance. The entire group was taken to the library where a strip search was conducted and three marijuana cigarettes were found in defendant's rectum. At some point Isgriggs asked defendant where he obtained the items but no response was given. Later, defendant said to Isgriggs, "Bill, let's just forget about this. I don't want to get in any more trouble while I'm here at Gumbo." The admission of this statement in evidence is the basis of defendant's first point on appeal. He contends the statement should have been suppressed because it was made prior to his being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.

For *Miranda* to be applicable, "an individual must be both in custody and interrogated." *State v. O'Toole*, 619 S.W.2d 804, 810 (Mo.App.1981). A statement uttered voluntarily and spontaneously is not inadmissible because *Miranda* rights

were not given. *State v. Butler*, 660 S.W.2d 225, 228 (Mo.App.1983); *State v. Gilbert*, 639 S.W.2d 398, 399 (Mo.App. 1982). There appears to be no disagreement that defendant was in custody at the time he made the statement. He was incarcerated at the Gumbo facility and at the particular time in question had been removed from the common area to the library for an extensive search. However, the statement was obviously not the product of interrogation.

The record does not disclose exactly where or when Isgriggs asked the defendant where he obtained the contraband. The question may have been asked in the gymnasium, after the discovery of the Pentazocine, or it may have been in the library after the discovery of the marijuana. Defendant's request that Isgriggs forget about the matter was definitely in the library after the strip search. At the suppression hearing Isgriggs testified that the defendant did not answer his question and that defendant's request for leniency was not in response to anyone's question; "he brought it out hisself." At the trial Isgriggs told the jury that defendant did not answer his questions about where he got the substances.

A. I just asked him a simple question: where did he got the contents?—where did he get it?

Q. And that's when he said, in response to that, "Give me a break"?

A. Not at that particular time.

Q. What did he say—anything?

A. No.

Rather than being a response to the question, defendant's solicitation of lenient treatment was a subsequent and spontaneous utterance to which *Miranda* does not apply. *State v. Butler*, 660 S.W.2d at 228. A similar request for leniency made by a non-Mirandized accused during custodial interrogation was held not to be a product of interrogation and therefore admissible in *State v. Mosby*, 667 S.W.2d 25, 26 (Mo.App. 1984). Defendant's first point is denied.

During cross-examination, Isgriggs mentioned making out an "institutional report"

as a duty of his employment. Counsel for defendant then asked the court to order that he be furnished a copy of this report. Apparently this request was honored as defendant subsequently recalled Isgriggs to the stand and questioned him about certain specific entries in the report. The record fails to reveal that defendant requested a mistrial or any relief beyond that which he received. Defendant does not dispute the fact the existence of the "institutional report" was unknown to the prosecuting attorney, and he raises no issue of bad faith or intentional concealment. Having received all of the relief he requested, defendant is in no position to complain on appeal. *McCormick v. Russo*, 432 S.W.2d 302, 305 (Mo.1968).

In response to his request for discovery the defendant was given a two page report made by a forensic scientist which set forth the laboratory analysis of the substances taken from defendant. This laboratory report indicated that analysis of these substances disclosed marijuana and Pentazocine. Apparently the report included an additional observation that no other controlled substances were present. Pentazocine, also called Talwin, is referred to in street parlance as the "T" of "T's and Blues." Defendant's attorney elicited from the author of the report that "Blues" is a blue tablet containing Trippelennamine and that no blue tablet had been turned over to the laboratory. On re-direct examination, the prosecuting attorney brought out that Trippelennamine was present in the powder tested. This was revealed by a gas chromatograph and mass spectrometer test. The results of this g.c.m.s. examination are produced on a computer generated graph which discloses the analysis of the substances tested. Defendant's attorney requested the court to declare a mistrial at the conclusion of the re-direct examination because he had not been given copies of the graph. He contends he was prejudiced because he would not have introduced the question of the presence or absence of Trippelennamine if he had known the graph disclosed its presence.

▆▆▆▆ Defendant's request for discovery sought "any reports or statements of ex-

perts...." He received the report relating to the finding of controlled substances but which, not unreasonably, made no mention of uncontrolled substances, the possession of which is not illegal. Moreover, it was cross-examination by defendant's attorney that lead to the disclosure at trial of the presence of Trippelennamine. Whatever damage to defendant's case may have resulted from this testimony, and we perceive it to be minimal at most, entered through a door he opened. He is in no position to complain because the trial court refused to erase what he himself brought about. *State v. Doebert*, 659 S.W.2d 280, 283 (Mo. App.1983). Furthermore, his request for a mistrial came only after all the testimony concerning the graph and its disclosures had been introduced without objection. A party may not sit idle while evidence is being presented and at its conclusion demand a mistrial as the only suitable remedy. *State v. Hawkins*, 679 S.W.2d 894, 897 (Mo.App.1984).

Judgment affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.